1998 ME 71

**FRASER EMPLOYEES FEDERAL CREDIT UNION**

v.

**Lyman LABBE.**

Supreme Judicial Court of Maine.

Submitted on Briefs March 9, 1998.

Decided April 6, 1998.

Robert Bellefleur, Madawaska, for Plaintiff.

Richard C. Cleary, Cleary & Gordon, P.A., Houlton, for Defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

PER CURIAM.

[¶ 1] Lyman Labbe appeals from a judgment entered in the Superior Court (Aroostook County, *Marsano, J.*) finding him liable to Fraser Employees Federal Credit Union (FEFCU) on various secured and unsecured promissory notes, and ordering the foreclosure and sale of certain real and personal property. Labbe argues that the court erred by not discharging him from liability on the promissory notes, and that the court exceeded the bounds of its discretion by imposing sanctions on him pursuant to M.R. Civ. P. 11. We affirm the judgment.

### I.

[¶ 2] The pertinent facts can be summarized as follows. In February 1990 Lyman Labbe executed and delivered to Fraser Employees Federal Credit Union (FEFCU) a $50,000 note and real estate mortgage. In June 1990 Labbe executed and delivered to FEFCU five additional promissory notes, four of which were secured by various pieces of personal property. One of the notes was unsecured.

[¶ 3] In June 1995 FEFCU commenced a foreclosure action pursuant to 14 M.R.S.A. §§ 6321–6325 (1980 & Supp.1997), alleging Labbe had defaulted on the real estate loan and had breached conditions of the mortgage by failing to make timely payments. Several weeks later FEFCU commenced an action to recover on the five personal property notes, which it alleged were also in default.[1] Labbe's answers asserted a total of twenty affirmative defenses to the real estate foreclosure action,[2] as well as three affirmative defenses to the action on the personal property loans.[3] Labbe also filed a seven-count counterclaim in the real estate action[4] and a four-count counterclaim in the action on the personal property loans.[5]

---

1. These actions were later consolidated for the purposes of trial.

2. Labbe's affirmative defenses consisted of the following: (1) failure to state a claim for which relief can be granted; (2) failure to mitigate damages; (3) laches; (4) "failure to abide by and conform to all conditions precedent to the assertion of this cause of action"; (5) payment in full; (6) accord and satisfaction; (7) statute of frauds; (8) failure to provide a notice of right to cure pursuant to 9–A M.R.S.A. § 5–110; (9) failure of consideration; (10) fraud; (11) estoppel; (12) unconscionability; (13) waiver; (14) illegality; (15) license; (16) "arbitration and award"; (17) failure "to aver that the principal sum claimed by the Plaintiff may not be computed by the exhibits incorporated into the Plaintiff's complaint"; (18) payment; (19) "breach of duties under the contract"; and (20) "failure to plead compliance with all conditions precedent." Following an ADR conference in November 1995, Labbe withdrew affirmative defenses # 1, 3, 6, 7, 12, 13, 15, and 16.

3. Labbe's affirmative defenses consisted of the following: (1) failure to state a claim for which relief can be granted; (2) statute of frauds; and (3) that "title to said tractor vested in the Defendant at the time of said conveyance." Following an ADR conference in November 1995, Labbe withdrew these affirmative defenses.

4. Labbe's original counterclaim alleged (1) that FEFCU had violated 15 U.S.C. § 1640 by improperly changing the method of calculating interest; (2) abuse of process; (3) fraudulent misrepresentation; (4) breach of fiduciary duty; (5) libel; (6) intentional infliction of emotional distress; and (7) negligent infliction of emotional distress. Following an ADR conference in November 1995, Labbe agreed to dismiss the libel and emotional distress counts.

5. Labbe's counterclaim alleged fraud and deceit; interference; impairment of credit; and slander of title.

[¶ 4] At his jury-waived trial, Labbe testified about three issues which now form the primary basis of his appeal. First, each of the personal property notes contains a signature line, which Labbe admitted signing and dating. Each note also contains a separate section, entitled "Credit Insurance Application," in which the borrower must indicate whether he wishes to purchase credit insurance. Labbe admitted that he signed the credit insurance section, but he denied having written the date "4/7/93" and his date of birth next to his signature.[6] Second, to perfect its security interest in several personal property items, FEFCU filed two UCC–1 financing statements with the Secretary of State. Although Labbe acknowledged that he signed and understood the security agreements, he denied having signed either financing statement.

[¶ 5] Third, Labbe testified about a meeting he had with FEFCU's president and loan manager in November 1994 to discuss his loans, which were in default. According to Labbe, the parties reached an agreement during the meeting to consolidate his existing loans, and FEFCU did not inform him that approval of the loan was subject to any contingencies until after the meeting had concluded. According to FEFCU's loan manager, however, the parties reached only a tentative agreement at the November 1994 meeting, and Labbe was informed during the meeting that the consolidated loan was conditioned upon satisfactory credit and title examinations.

[¶ 6] The court entered a judgment in favor of FEFCU on both actions and on Labbe's counterclaims, and imposed a $1,200 sanction on Labbe pursuant to M.R. Civ. P. 11 based on its finding that Labbe's counterclaims and affirmative defenses were "with-

out factual basis or merit" and were interposed for delay. This appeal followed.

## II.

[¶ 7] Labbe contends that the court erred by failing to conclude that he had been discharged from liability on the promissory notes as a result of FEFCU's unauthorized insertion of dates on the notes, its unauthorized reproduction of his signature on the financing statements, and its November 1994 agreement to consolidate his existing loans. His arguments are utterly without merit. First, FEFCU's insertion of the date "4/7/93" and his date of birth next to his signature in the credit insurance portion of the notes had no effect on his obligations and did not discharge him from liability. See 11 M.R.S.A. § 3–1407 (1995 & Supp.1997) (alteration of negotiable instruments). Second, Labbe's liability on the promissory notes was unaffected by the alleged deficiencies in the UCC–1 financing statements, which govern the relative rights of competing creditors. See id. § 9–203 (attachment and enforceability of a security interest); id. §§ 9–301 to 9–318 (rules of priority). Finally, the record provides ample support for the trial court's conclusion that the consolidated loan discussed at the November 1994 meeting was expressly contingent upon a satisfactory title examination. See Liberty Group v. 73 India Street Assocs., 642 A.2d 1344, 1345 (Me.1994) (trial court's findings of fact will not be overturned unless clearly erroneous).

## III.

[¶ 8] Labbe argues that the court exceeded the bounds of its discretion in imposing sanctions pursuant to M.R. Civ. P. 11 based on its conclusion that Labbe's affirmative defenses and counterclaims were interposed for delay.[7] We review a trial court's

---

6. A FEFCU representative acknowledged that FEFCU employees were instructed by federal bank examiners to insert the missing dates in red ink in such circumstances, and that the insertion of dates in the credit insurance section was intended to have no effect on the terms of the notes.

7. M.R. Civ. P. 11 provides in pertinent part:

The signature of an attorney or party constitutes a certificate by the signer that the signer

has read the pleading or motion; that to the best of the signer's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay.... If a pleading or motion is signed with intent to defeat the purpose of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, upon a represented party, or upon both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the

**1030**

imposition of sanctions only for an abuse of discretion. *See Chiappetta v. LeBlond*, 544 A.2d 759, 760 (Me.1988).

■ [¶ 9] Labbe filed a total of 23 affirmative defenses and 11 counterclaim counts, some of which he agreed to withdraw about five months after the actions were commenced.[8] *See supra* notes 2–5. The court expressly found that Labbe had failed to present any evidence in support of many of his affirmative defenses and counterclaims, and that they were interposed solely for the purpose of delaying the foreclosure proceedings. Contrary to Labbe's contention that Rule 11 sanctions must be limited to reimbursement for attorney fees or expenses incurred as a result of the improper pleading, Rule 11 contains no such requirement. Rather, the rule authorizes the court to impose "an appropriate sanction," which *may include* attorney fees and expenses. The court acted well within the bounds of its broad discretion by imposing a $1,200 sanction on Labbe.

### IV.

■ [¶ 10] Finally, FEFCU asks us to award it additional costs pursuant to M.R. Civ. P. 76(f).[9] We will exercise this power when "an appeal is obviously without any merit and has been taken with no reasonable likelihood of prevailing, and results in delayed implementation of the judgment of the lower court; increased costs of litigation; and a dissipation of the time and resources of the Law Court." *Auburn Harpswell Ass'n v. Day*, 438 A.2d 234, 238–39 (Me.1981); *see International Silver Co. v. DiGirolamo*, 475 A.2d 1143, 1145 (Me.1984). Labbe has filed a frivolous appeal intended only for delay. We award to FEFCU treble costs plus $500, to be applied to FEFCU's attorney fees. *See*

reasonable expenses incurred because of the filing of the pleading or motion, including a reasonable attorney's fee.

8. Although Labbe eventually withdrew some of his affirmative defenses and counterclaims before trial, *see supra* notes 2–4, FEFCU was nevertheless required to research, prepare for, and respond to Labbe's allegations during the interim.

14 M.R.S.A. § 1802 (1980 & Supp.1997); M.R. Civ. P. 76(f).

The entry is:

Judgment affirmed. Further ordered that defendant pay to plaintiff treble costs and $500, to be applied toward FEFCU's attorney fees.

9. M.R. Civ. P. 76(f) provides in pertinent part:

If the Law Court determines that an appeal . . . is frivolous or instituted primarily for the purpose of delay, it may award to the opposing parties or their counsel treble costs and reasonable expenses, including attorney's fees, caused by such action.