MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2016 ME 8
Docket:        Pen-15-197
Submitted
 On Briefs:   September 28, 2015
Decided:       January 14, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

CASEY D. (CAVAGNARO) HAMLIN

v.

JASON T. CAVAGNARO

PER CURIAM

[¶1]  In this post-judgment divorce appeal, Jason T. Cavagnaro appeals from an order of the District Court (Dover-Foxcroft, *Stitham, J.*) granting Casey Hamlin's motion for change of venue, and from an order of the District Court (Bangor, *Campbell, J.*) modifying a previously amended divorce judgment, awarding Cavagnaro attorney fees as a remedial sanction for Hamlin's contempt, and declining to impose additional remedial sanctions on Hamlin.  We affirm the judgment and the sanctions.

## I.  BACKGROUND

[¶2]  Hamlin and Cavagnaro were married in 1998 in Virginia and had three children together.  In 2009, Hamlin filed for divorce after moving to Maine with the children.  Following a contentious trial, the court (*Stitham, J.*) entered a

2

judgment of divorce on November 13, 2009, which, among other things, awarded Hamlin primary residence of the children and provided Cavagnaro eight weeks of visitation with the children per year beginning in 2010.

[¶3] Subsequently, Cavagnaro filed a motion to modify the divorce judgment and a motion for contempt. On October 11, 2013, the court modified the order in a lengthy judgment that detailed the chronic conflict between the parties and its impact on the children. The court declined to grant Cavagnaro primary residence but modified the order to provide for shared residence of the children. The court also imposed various requirements intended to increase communication and cooperation between the parties, and did not find Hamlin in contempt.

[¶4] Specifically, the court found that since imposition of the original judgment, Hamlin had "repeatedly refused to communicate and consult with [Cavagnaro] in a constructive manner." The court also found, however, that "the children would be just fine residing with either parent"; the oldest child, who is "wise beyond her years," prefers to live with Hamlin; and it is in the best interests of the younger children to reside in the same household as the oldest child. Ultimately, the court determined that it was still in the best interests of the children for Hamlin to have primary residence, but only if Hamlin "is able to change her ways significantly such that she truly facilitates and encourages [Cavagnaro] having a far richer and meaningful relationship with each of these children." Thus,

it found that, at that time, it was in the best interests of the children for the parents to share residence of the children; the children would reside in Maine with Hamlin during the school year and in Virginia with Cavagnaro during the Christmas, February, April, and summer vacations.

[¶5] In February 2014, Cavagnaro again filed a motion to modify the divorce judgment and a motion for contempt in the District Court (Dover-Foxcroft). Before the motions were heard, on May 29, 2014, Hamlin filed an email that included a "request for change of venue," seeking to have the case transferred from the Dover-Foxcroft court. Hamlin also indicated that she wished to be assigned a different judge because the judge currently presiding over the case was "biased" against her. After a brief hearing during which the court heard arguments from both parties, the court granted Hamlin's motion for a change of venue in a written order and transferred the case to the District Court in Bangor. The court's order does not include an explanation of the basis for granting the motion for change of venue, no party filed a motion seeking explanation of the court's order, and no transcript of that hearing has been provided. The order does not include an order of recusal.

[¶6] After the case was transferred, Cavagnaro filed a motion for attorney fees. The District Court (Bangor, *Campbell, J.*) held a bench trial on the pending motions to modify, for contempt, and for attorney fees. In determining whether to

4

modify the October 2013 order, the court acknowledged that the order, which had been intended to provide Cavagnaro with increased time with the children and provided for shared residence of the children, "tried very hard" to make sure that all three children had a "meaningful relationship with both of their parents." It found, however, that the order had unfortunately produced the opposite of its intended effect; the effort at shared caretaking created significant resentment from the children towards Cavagnaro, was not working well, and was not in the best interests of the children. Regarding holidays, it found that all of the children, who are "now at the age where they have their own opinions on what they want to do and what is fair,"[1] wish to spend their holidays with both parents, rather than just one as mandated by the October 2013 order. The court determined that the failure of the October 2013 order, coupled with the children's advancement in age and maturity, constituted a substantial change in circumstances allowing modification of the order.

[¶7]  In determining how to modify the order, the court cogently described the difficulties presented by the parents' chronic inability to work together for the benefit of their children and applied the legislatively established directive to "consider as primary the safety and well-being of the child[ren]." 19-A M.R.S.

---

[1]  At the time of the court's judgment, the oldest daughter was sixteen years old and the twins were ten years old.

§ 1653(3) (2015). The court noted the history of parental alienation by Hamlin against Cavagnaro and was troubled by "the obvious animosity between the parties and their inability to co-parent." The court found that Cavagnaro would be more likely than Hamlin "to encourage frequent and continuing contact between the children and the other parent," and concluded that this factor weighed in favor of granting primary residence to Cavagnaro.

[¶8] In counterbalance, the court also found that all three of the children are very attached to their home in Maine where they are involved in school and the local community and live near extended family. The oldest child, who was characterized in the 2013 order as "far more impressive than either of her parents (individually or collectively)," expressed a strong and meaningful preference for staying in Maine rather than moving to Virginia where Cavagnaro resides. The court found that it would be "cruel" to go against her wishes and to uproot her from her school. The younger children are not old enough to express a meaningful preference regarding residence, but the court found that it is in the best interests of the children to keep all three of the children together. The younger children benefit greatly from the presence of their older sister, who is an excellent role model and caretaker. It is important for the children to have stability and continuity in their lives. The court concluded that all of these factors weighed in favor of Hamlin

6

having primary residence of all of the children, as well as a decrease of Cavagnaro's time with the children as set out by the October 2013 order.

[¶9]  Finally, the court recognized the challenges with the requested modification of the order.  Specifically, Cavagnaro's proposed abrupt removal of the children from their home, their community, and their friends in order to fulfill his understandable desire to have primary residence or additional visitation would be contrary to the children's best interests.  The court concluded that the factors in favor of granting primary residence to Hamlin and reducing Cavagnaro's visitation time outweighed Hamlin's inability to cooperate and encourage contact with Cavagnaro.

[¶10]  Thus, based on this thorough and thoughtful review of the evidence presented at trial, the court modified the divorce judgment by awarding Hamlin primary residence of the children and reducing Cavagnaro's visitation time.  The court found that Hamlin was in contempt for her deliberate failure and refusal to comply with the terms of the October 2013 order, considered Hamlin's contempt in granting Cavagnaro's request for attorney fees, and declined to impose further sanctions on Hamlin at that time.

[¶11]  Cavagnaro appeals to us, arguing that the court (Dover-Foxcroft, *Stitham, J.*) abused its discretion in transferring the case, and the court (Bangor, *Campbell, J.*) abused its discretion in modifying the divorce judgment and in

declining to impose remedial sanctions on Hamlin in addition to the attorney fees. *See* 19-A M.R.S. § 104 (2015); 14 M.R.S. § 1901(1) (2015); M.R. App. P. 2.

## II. DISCUSSION

A. Standards of Review

[¶12] We review a court's grant or denial of a motion for a change of venue and a court's imposition of remedial sanctions for an abuse of discretion. *See State v. Holland*, 2009 ME 72, ¶ 46, 976 A.2d 227 (change of venue); *Hogan v. Veno*, 2006 ME 132, ¶ 18, 909 A.2d 638 (imposition of remedial sanctions). We review a court's modification of a divorce judgment for factual error, abuse of discretion, or an error of law. *See Sloan v. Christianson*, 2012 ME 72, ¶¶ 25, 26, 43 A.3d 978 (post-divorce judgment). The court does not abuse its discretion unless it "exceed[s] the bounds of the reasonable choices available to it, considering the facts and circumstances of the particular case and the governing law." *Sager v. Town of Bowdoinham*, 2004 ME 40, ¶ 11, 845 A.2d 567.

B. Motion for a Change of Venue

[¶13] Hamlin's motion sought a change of venue. Although the motion included grounds that also appeared to seek recusal, she did not explicitly request "recusal."[2] The court therefore acted within its discretion in addressing only the

---

[2] Bare allegations of bias based on a previous ruling would not require recusal. *See In re Michael M.*, 2000 ME 204, ¶¶ 11-14, 761 A.2d 865.

8

motion to change venue.[3]  In addressing a motion to change venue, "[t]he court may, upon motion or its own initiative, transfer any case to another division for the convenience of parties or witnesses or in the interest of justice."  4 M.R.S. § 155(8) (2015).  The court acted within its broad range of discretion in granting the change of venue.  Based on the record in this case and the parties' consistent need for extensive judicial attention, the court did not abuse its discretion in transferring this contentious matter to the District Court in Bangor where additional judicial resources were available.

C.     Motion to Modify the Divorce Judgment

[¶14]  After a full hearing on the motion to modify the previously modified child contact provisions of the divorce judgment, the District Court (Bangor, *Campbell, J.*) entered a comprehensive written decision in which it carefully considered the evidence that was presented to determine how best to modify the judgment.  On one hand, the court acknowledged that there had been a history of conflict and an inability to co-parent between the parties, and found that Cavagnaro would be more likely to encourage co-parenting than Hamlin.  *See* 19-A M.R.S. § 1653(3)(H).  On the other hand, the court also found that all of the children are

---

[3] The Maine Rules of Civil Procedure were recently amended to clarify the recusal procedure. *See* M.R. Civ. P. 63(b)(2)(A) ("When a party moves for a judge to recuse, the party must include in the motion an assertion of the factual grounds supporting recusal and file with the motion one or more affidavits demonstrating an evidentiary basis for those facts.").  Thus, any confusion regarding this process has been clarified, and the lack of procedural clarity in this case should not be repeated.

attached to their home in Maine, where they are involved in the community and have an abundance of family and friends, *see* 19-A M.R.S. § 1653(3)(G); the children wish to spend their holidays with both parents, *see* 19-A M.R.S. § 1653(3)(C); the oldest child expressed a meaningful preference to live in Maine with Hamlin, *see* 19-A M.R.S. § 1653(3)(C); it is important to keep all of the children together because the younger children benefit from the presence of the oldest child in the household, *see* 19-A M.R.S. § 1653(3)(B); and all of the children need continuity and stability in their lives, *see* 19-A M.R.S. § 1653(3)(D)-(E).  The court concluded that these factors outweighed Hamlin's inability to cooperate and encourage contact with Cavagnaro.

[¶15]  When, despite the best efforts of concerned judges, two parents cannot find a way to cooperate in their parenting, the court must determine what custody arrangements will further the best interests of the children.  *See Cloutier v. Lear*, 1997 ME 35, ¶ 8, 691 A.2d 660.  Here, the court appropriately weighed the best interest factors pursuant to 19-A M.R.S. § 1653(3) in written findings, which are supported by the record.  *See id.* ¶ 7.  It determined that it would be in the children's best interests for Hamlin to have primary residence of the children and for the children to spend holidays with both of their parents rather than spending every holiday with Cavagnaro.  It recognized Cavagnaro's frustration but considered its most important responsibility, acting as parens patriae, to be

ensuring the children's stability, mental health, and long-term needs. The court did not err or abuse its discretion in modifying the divorce judgment. *See Sloan*, 2012 ME 72, ¶ 40, 43 A.3d 978.

D.    Sanctions

[¶16]  Cavagnaro filed motions in the trial court both for contempt pursuant to M.R. Civ. P. 66(d)(3), seeking the imposition of remedial sanctions against Hamlin, and for attorney fees. The court awarded Cavagnaro attorney fees as a remedial sanction for Hamlin's contempt, but declined to impose additional sanctions.

[¶17]  The rules permit the court to award attorney fees in place of imposing punitive sanctions, such as fines or imprisonment. "[A]s an alternative to [] sanctions . . . if loss or injury to a party in an action or proceeding has been caused by the contempt, the court may enter judgment . . . to satisfy the costs and disbursements, including reasonable attorney fees, of the aggrieved party." M.R. Civ. P. 66(d)(3)(C). Thus, the court did not abuse its discretion in awarding attorney fees as a remedial sanction for Hamlin's contempt and declining to impose additional sanctions.

The entry is:

Judgment affirmed.

**On the briefs:**

Martha J. Harris, Esq., Paine, Lynch & Harris, P.A., Bangor, for appellant Jason T. Cavagnaro

Misty Allen, Esq., Penquis Law Project, Bangor, for appellee Casey D. (Cavagnaro) Hamlin

Bangor District Court docket number FM-2014-277
FOR CLERK REFERENCE ONLY